NOT RECOMMENDED FOR PUBLICATION
File Name: 11a0502n.06

No. 08-4390

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 20, 2011*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| OSCAR RENE MUNOZ, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

Before: COLE, CLAY, and GILMAN, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.** Oscar Rene Munoz seeks to avoid the application of the appellate-waiver provision in his plea agreement so that he can challenge the reasonableness of his sentence. He and his brother Frank Munoz pled guilty to a conspiracy to possess cocaine with the intent to distribute the drug. Oscar's benefit from pleading guilty was that the government agreed to dismiss another charge against him and to file a motion to reduce his sentence if he cooperated with the government by implicating others. He argues that the government breached the plea agreement, thereby rendering the appellate waiver unenforceable, by failing to explain to the sentencing judge the extent of Oscar's cooperation as fully as the government had explained his brother's cooperation during the latter's separate sentencing hearing. For the reasons set forth below, we **DISMISS** Oscar's appeal due to the appellate-waiver provision in his plea agreement.

## I. BACKGROUND

In July 2007, a grand jury in the Southern District of Ohio returned a two-count indictment charging Oscar Munoz, his brother Frank Munoz, and others with one count of conspiracy to possess more than five kilograms of cocaine with the intent to distribute the drug, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii) and 846, and a second count of an attempt to possess more than five kilograms of cocaine with the intent to distribute the drug, in violation of 21 U.S.C. § 846. Oscar entered into a plea agreement in September 2007 whereby he pled guilty to Count 1 (the conspiracy count) and the government agreed to drop Count 2 (the attempt count).

In the plea agreement, Oscar expressly waived his right to appeal any sentence that did not exceed the statutory maximum penalty, which in this case was life imprisonment. The government's attorney summarized the plea agreement, including the appellate-waiver provision, at Oscar's change-of-plea hearing. With regard to the appellate-waiver provision, he stated that

> [Oscar] understands and is aware that Title 18, Section 3742 of the United States Code affords him the right to appeal; however, in exchange for the United States' undertakings in this Plea Agreement, he waives his rights conferred by 18 U.S.C. 3742 to appeal any sentence imposed except for the grounds that the sentence exceeds the statutory maximum penalty.

The district court asked Oscar several times if the government's recital of the terms of the plea agreement matched Oscar's understanding. Each time Oscar answered yes. The court also asked Oscar if anyone from the government had promised him any form of leniency outside of the plea agreement if he pled guilty. Oscar answered no.

After accepting Oscar's guilty plea, the district court considered Oscar's bond status and his prior bond violations. The court was reluctant to release Oscar on his own recognizance again, but ultimately decided to do so. Two prominent reasons for the court's decision were (1) that the

government's attorney noted that another failure by Oscar to appear while out on bond could result in a harsher sentence under the terms of the plea agreement, and (2) that Oscar personally assured the court that he would comply with the conditions of his release on bond.

The district court then scheduled a sentencing hearing for January 2008. But Oscar absconded shortly after his release on bond and, in October 2007, the district court issued a warrant for his arrest. Oscar was finally found in Arizona in May 2008, taken into custody, and detained pending sentencing.

At the sentencing hearing held in September 2008, the Probation Office recommended that Oscar be sentenced to 130 months' imprisonment. The government then moved for a reduction in Oscar's sentence by filing a substantial-assistance motion under United States Sentencing Guidelines § 5K1.1, which the court granted. In fashioning Oscar's sentence, the court considered the various statutory sentencing factors, but also noted that Oscar's sentence "should take into account the defendant's past bond violations and his absconding supervision." The court ultimately sentenced Oscar to 87 months' imprisonment, followed by five years of supervised release, as well as a fine and enrollment in addiction-treatment programs while he was in prison and out on supervised release.

Oscar timely appealed. The government responded by filing a motion to dismiss the appeal on the ground that Oscar had waived the right to appeal his sentence in the plea agreement.

## II. JURISDICTION

Even where a defendant has waived the right to appeal, this court retains jurisdiction to hear the defendant's challenge to the judgment of the district court. *United States v. Caruthers*, 458 F.3d 459, 472 n.6 (6th Cir. 2006) (noting that although "we have said that a valid appellate waiver leaves this court without jurisdiction to hear a sentencing appeal," we have also "affirmed sentences

challenged by defendants who had validly waived their appeals . . . , suggesting that an appellate waiver does *not* divest this court of jurisdiction") (emphasis in original)). Enforcing appellate waivers to dismiss appeals "fits comfortably in the rubric of a mere claim-processing rule . . . and therefore should not be labeled 'jurisdictional.'" *Id.*

## III. ANALYSIS

Oscar argues on appeal that his sentence is procedurally and substantively unreasonable. The government counters that Oscar has waived his right to appeal on this basis because the plea agreement expressly waives his right to challenge any sentence imposed except on the grounds that the sentence exceeds the statutory maximum penalty. Oscar has two responses: (1) the appellate-waiver provision in the plea agreement is unenforceable because the government breached the plea agreement, and (2) even if the appellate waiver is enforceable, he did not waive the right to appeal the reasonableness of his sentence. We will address each argument in turn.

### A. Breach-of-plea-agreement issue

If the government materially breaches a plea agreement, then any appellate waiver contained in the agreement is unenforceable. *United States v. Swanberg*, 370 F.3d 622, 626-29 (6th Cir. 2004) (holding that the defendant could appeal his sentence even though he had validly waived his right to appeal because the government materially breached the plea agreement). Oscar argues that the government breached the present plea agreement "by failing to make the same factual statement about his cooperation that was made to the benefit of Frank Canez Munoz, thereby rendering the provision in the plea agreement waiving his right to appeal his sentence unenforceable." Specifically, Oscar contends that the government provided more detailed information about the brothers' cooperation in a sealed sidebar conference during Frank's sentencing hearing than it did during Oscar's sentencing

hearing. Oscar did not learn about this difference until well after his own sentencing, when his attorney obtained a transcript of the sealed sidebar conference involving his brother Frank.

Appellate courts ordinarily review de novo the issue of whether a plea agreement was breached. *Swanberg*, 370 F.3d at 627. The government, however, asserts that this issue should instead be reviewed under the plain-error standard because Oscar did not argue that the government breached the plea agreement at his sentencing hearing. We acknowledge that the government's position is not without support: "This court's decisions . . . have consistently applied plain-error review where a defendant fails to claim during sentencing that the government has breached the plea agreement." *Id.* But because Oscar had no knowledge of the alleged breach until after his sentencing, he was not able to raise this objection at sentencing, which weighs in favor of applying de novo review. We need not decide which standard of review to use in this case, however, because Oscar cannot show a breach of the plea agreement even under the more lenient de novo standard.

Turning now to the merits of Oscar's argument, "we use traditional contract law principles in interpreting and enforcing" plea agreements because they are contractual in nature. *United States v. Bowman*, 634 F.3d 357, 360 (6th Cir. 2011) (internal quotation marks omitted). "But because plea agreements' constitutional and supervisory implications raise concerns over and above those present in the traditional contract context, in interpreting such agreements we hold the government to a greater degree of responsibility than the defendant for imprecisions or ambiguities in the plea agreements." *Id.* (internal quotation marks and ellipsis omitted). We therefore construe such ambiguities against the government, especially because the government has the ability to draft plea agreements more precisely to avoid imprecision. *Id.* at 360-61.

We find Oscar's argument that the government breached the plea agreement unpersuasive because its premise—that the government promised as part of the plea agreement to make the same factual statement during Oscar's sentencing hearing about his cooperation as it had made during his brother's hearing about the latter's cooperation (the "similar-statements promise")—has no support in the record. The plea agreement in this case does not require the government to make *any* specific factual statement about Oscar's cooperation, let alone the same factual statement that it made about Frank's cooperation. In exchange for Oscar's plea and cooperation, the government made three promises: (1) to dismiss Count 2 of the Indictment after Oscar was sentenced on Count 1; (2) to not charge Oscar with additional nonviolent crimes based solely on Oscar's conduct underlying the current charges; and (3) if the government determined in its sole discretion that Oscar continued to provide substantial assistance, then it would file a motion seeking to reduce Oscar's sentence based on his assistance.

None of the above promises match the similar-statements promise that Oscar alleges was breached. Moreover, the integration clause in the plea agreement (which Oscar fails to address) reinforces the conclusion that the alleged similar-statements promise is not part of the plea agreement. This clause provides that "[t]his written Agreement embodies all of the agreements and understandings between the United States Attorney for the Southern District of Ohio and the defendant. No conversations, discussions, understandings, or other documents extraneous to the Agreement shall be considered part of the Agreement." And Oscar confirmed during the change-of-plea hearing that no one from the government had promised him any form of leniency beyond the plea agreement itself. Because the plain language of the plea agreement shows that the alleged similar-

statements promise is not a part of the agreement, the government could not possibly have breached a nonexistent promise. The appellate-waiver provision in the plea agreement is therefore enforceable.

**B.      Waiver of Oscar's appellate rights**

Oscar's remaining argument is that even if the appellate-waiver provision is valid, he did not waive the right to challenge the reasonableness of his sentence because the district court was obligated to sentence him in accordance with 18 U.S.C. § 3553(a). That may indeed be true, but there is still no merit to his argument that this alleged obligation somehow grants him the right *to appeal* the reasonableness of his sentence. "It is well settled that a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004). Oscar expressly agreed to a broad waiver of his appellate rights under the plea agreement:

> The defendant is aware that Title 18, United States Code, Section 3742, affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the *defendant hereby waives all rights conferred by 18 U.S.C. § 3742 to appeal any sentence imposed except for the grounds that the sentence exceeds the statutory maximum penalty*.

(Emphasis added.)

The above language unambiguously encompasses Oscar's sentence. He was sentenced to 87 months' imprisonment, far less than the statutory maximum penalty for his offense, which is life imprisonment, *see* 21 U.S.C. § 841(b)(1)(A). Oscar therefore cannot avail himself of the sole exception in the appellate-waiver provision. Moreover, 18 U.S.C. § 3742 is the "exclusive avenue" for a party to "appeal a sentence imposed as the result of a run-of-the-mill plenary sentencing proceeding following a conviction." *United States v. Bowers*, 615 F.3d 715, 719 (6th Cir. 2010)

(internal quotation marks omitted). Because Oscar waived all rights conferred by 18 U.S.C. § 3742 to appeal any sentence that did not exceed the statutory maximum penalty, Oscar has no basis to avoid his appellate waiver.

Moreover, the proper procedure was followed by the district court below in accepting Oscar's plea. The prosecutor set forth the terms of the appellate-waiver provision in open court and the district judge made sure that Oscar understood those terms before accepting his guilty plea. *See United States v. McGilvery*, 403 F.3d 361, 363 (6th Cir. 2005) (summarizing the proper procedure for accepting guilty pleas where the plea agreement contains an appellate-waiver provision). Although Oscar correctly states the well-settled principle that "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of a district court," his procedural- and substantive-reasonableness challenges do not rise to the level that this principle contemplates. *See United States v. Caruthers*, 458 F.3d 459, 471-72 (6th Cir. 2006) (illustrating the narrow scope of this principle by noting the following two examples of nonwaivable rights: (1) the right to appeal sentences above the statutory maximum, or (2) the right to "attack sentences based on constitutionally impermissible criteria like race").

## IV. CONCLUSION

For all of the reasons set forth above, we **DISMISS** Oscar's appeal.