**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0969n.06

Nos. 11-1522, 11-2534, 12-1698, 11-2540

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Nov 13, 2013 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| EMOND DUREA LOGAN, MARLAN MICAH | ) | UNITED STATES DISTRICT |
| MCRAE, and OWUSU ANANEH FIREMPONG, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE:  ROGERS, GRIFFIN, and DONALD, Circuit Judges.

GRIFFIN, Circuit Judge.

These consolidated appeals arise from defendants' convictions of crimes stemming from their involvement in a conspiracy to transport significant quantities of cocaine from California to Michigan, where cocaine was distributed in Detroit and Lansing.  Defendant Logan pleaded guilty to conspiracy to distribute and possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) (cocaine conspiracy), and now appeals his sentence. Defendants McRae and Firempong were each convicted by a jury of cocaine conspiracy, and Firempong was also convicted of conspiracy to launder money, in violation of 18 U.S.C. § 1956(h). McRae and Firempong appeal their convictions and sentences.  For the reasons set forth below, we affirm.

I.

We first address Logan's claims. Logan argues that the government breached the plea agreement and he is therefore entitled to resentencing. Although we agree with Logan that the government breached the plea agreement, we disagree that he is entitled to resentencing.

A.

It is undisputed that Logan raised his claim that the government breached the plea agreement for the first time on appeal and that his plea agreement contained a waiver of his appellate rights. This court reviews de novo "the question of whether a defendant waived his right to appeal his sentence in a valid plea agreement." *United States v. Keller*, 665 F.3d 711, 715 (6th Cir. 2011) (internal citation and quotations omitted). But, because Logan did not assert in the district court that the government breached the plea agreement, even if we conclude that Logan did not waive his right to appeal his sentence, our review of his claim is for plain error affecting substantial rights. *See Puckett v. United States*, 556 U.S. 129, 134 (2009) (the plain-error test applies "in the usual fashion" to a forfeited claim that the government breached a plea agreement).

Plain-error review "involves four steps, or prongs." *Id.* at 135.

First, there must be an error or defect–some sort of "[d]eviation from a legal rule"–that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. [*United States v. Olano,* 507 U.S. 725,] 732-733, 113 S. Ct. 1770 [(1993)]. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. See *id.*, at 734, 113 S. Ct. 1770. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the district court proceedings." *Ibid.* Fourth and finally, if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error-discretion which ought to be exercised only if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.*, at 736, 113 S. Ct. 1770 (quoting *United States v. Atkinson*, 297

U.S. 157, 160, 56 S. Ct. 391, 80 L. Ed. 555 (1936)). Meeting all four prongs is difficult, "as it should be." *United States v. Dominguez Benitez*, 542 U.S. 74, 83, n.9, 124 S. Ct. 2333, 159 L. Ed. 2d 157 (2004).

*Id.*

## B.

We "use traditional contract law principles in interpreting and enforcing" plea agreements because they are contractual in nature. *United States v. Bowman*, 634 F.3d 357, 360 (6th Cir. 2011). To that end, in determining whether a plea agreement has been breached, this court examines what the defendant "reasonably understood" when he entered into the agreement. *United States v. Phibbs*, 999 F.2d 1053, 1081 (6th Cir. 1993). "[T]he most persuasive evidence of what a defendant reasonably appreciated as his bargain is found in the plain language of the court-approved agreement." *Id.*

Turning to the plain language of the plea agreement at issue here, the critical passage of the plea agreement specified that the government would

> not . . . oppose [Logan's] request for a two-level reduction of his offense level for acceptance of responsibility under § 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to [Logan's] request if it subsequently learns of conduct by [Logan] inconsistent with the criteria set forth in the Commentary to Section 3E1.1.

In its sentencing memorandum, however, the government did oppose Logan's request for a two-level reduction for acceptance of responsibility when it asserted that "Logan's guidelines properly . . . do not include a . . . reduction for acceptance of responsibility[.]" Similarly, at sentencing, the government indicated that it had "no disagreements" with the presentence report (PSR), which explicitly stated that a reduction for acceptance of responsibility was improper. At sentencing, the

government also specifically asked that Logan's motion for a downward variance for acceptance of responsibility be denied. In short, the government's position in its memorandum and at sentencing violated the plain language of the plea agreement.

The government notes that, while he was released on bond, Logan engaged in conduct consistent with obstruction of justice, including funding a large marijuana grow operation, encouraging a government witness not to cooperate, and threatening to kill both Alvin Jackson, a co-conspirator, and the Assistant United States Attorney (AUSA) prosecuting the case against Logan. The government argues that it did not breach the plea agreement because "a promise not to oppose a reduction for acceptance of responsibility does not preclude the government from seeking an enhancement for obstruction of justice . . . in the absence of any agreement on obstruction." In essence, the government argues that acceptance of responsibility and obstruction of justice are two distinct concepts, and that it did not violate the plea agreement by advocating for an obstruction of justice enhancement, even though in most cases the practical effect of an obstruction of justice enhancement is the denial of an acceptance of responsibility reduction. *See* U.S.S.G. § 3E1.1, cmt. n.4 (conduct resulting in an enhancement for obstruction of justice ordinarily indicates that the defendant has not accepted responsibility except in extraordinary cases). The government is correct that this court has held that where the government "stand[s] mute" as to a condition negotiated in the plea agreement, it does not violate the plea agreement by seeking other enhancements not spelled out in the plea agreement. *United States v. Miller*, 48 F. App'x 933, 946 (6th Cir. 2002); *see also United States v. Yellow*, 627 F.3d 706, 708–09 (8th Cir. 2010) (no breach where government did not oppose acceptance of responsibility but did present evidence of obstruction and the district court

found that the defendant obstructed justice and that therefore he had not accepted responsibility); *United States v. Wilkins*, 346 F. App'x 936, 938 (4th Cir. 2009) (per curiam) (same). Indeed, there would have been no breach had the government remained neutral at sentencing as to acceptance of responsibility and separately advocated for an enhancement for obstruction of justice. But that is not what the government did. It did not assert that an enhancement for obstruction of justice was appropriate and then "stand mute" on the issue of acceptance of responsibility. *Miller*, 48 F. App'x at 946. Rather, in its sentencing memorandum and at the sentencing hearing, the government argued that an enhancement for obstruction of justice was appropriate and then went further, arguing that, *therefore*, a reduction for acceptance of responsibility was not appropriate. At that point, the government's bargained-for neutrality on the issue of acceptance of responsibility ceased, and it thus violated the promise it made in the plea agreement.

The government also argues that Logan waived his right to appeal his sentence. We disagree. Although it is undisputed that Logan's plea agreement contained a waiver provision, "[i]f the government materially breaches a plea agreement, then any appellate waiver contained in the agreement is unenforceable." *United States v. Munoz*, 430 F. App'x 495, 498 (6th Cir. 2011) (citing *United States v. Swanberg*, 370 F.3d 622, 626–29 (6th Cir. 2004) (the defendant could appeal his sentence where the government materially breached the plea agreement, despite a valid waiver)). Here, the government's breach was material. The plea agreement provision regarding the government's position on acceptance of responsibility was central to the plea agreement; moreover, the government's breach deprived Logan of "the benefit which he reasonably expected," namely, its neutrality at sentencing on the issue of acceptance of responsibility. RESTATEMENT (SECOND)

OF CONTRACTS § 241 (1979) (discussing factors relevant to whether a breach is material); *see also Bowman*, 634 F.3d at 360 (this court uses contract law principles when analyzing plea agreements).

However, because Logan has failed to establish that the government's breach affected his substantial rights under plain-error analysis, he is not entitled to resentencing. Logan relies heavily on *United States v. Barnes*, 278 F.3d 644, 648 (6th Cir. 2002), in which this court held that the government's breach of a plea agreement was plain error affecting the defendant's substantial rights because "the breach violated [the defendant's] constitutional rights such that the fundamental fairness and integrity of the judicial proceeding were compromised." *Id.* Logan argues that *Barnes* and its progeny stand for the proposition that the government's breach of a plea agreement *per se* satisfies the third prong of plain-error review, and therefore remand for resentencing is appropriate here. We disagree. Logan ignores *Keller*, in which this court squarely held that "[w]e do not think [*Barnes*'] holding, post-*Puckett*, applies . . . ." 665 F.3d at 715. As previously explained, the Supreme Court in *Puckett* held that plain-error analysis applies "in the usual fashion" to the government's breach of a plea agreement; accordingly, Logan bears the burden to establish not only that the breach was plain error, but also that it "affected the outcome of the district court proceedings." 556 U.S. at 134, 135 (internal citation and quotation marks omitted).

Here, Logan cannot show that the government's breach affected the outcome of the district court proceedings. As noted above, generally where a defendant has obstructed justice, he has not accepted responsibility, and, accordingly, a reduction for acceptance of responsibility is inappropriate in such cases. U.S.S.G. § 3E1.1, cmt. n.4. The exception is for "extraordinary cases," *id.,* and we conclude that this case is not extraordinary. First, the conduct underlying the obstruction

of justice enhancement was serious—it included Logan's threats while released on bond to kill the AUSA and Alvin Jackson, a witness against him. There was also evidence that, prior to being indicted, Logan was directly involved in the attempted murder of Alvin Jackson. Second, at sentencing, Logan continued to deny that he was involved in Alvin Jackson's attempted murder, and when confronted with his statements threatening to kill the AUSA, Logan was not contrite but attempted to explain them away as "bluster." The district court explicitly found that Logan was "not telling the truth in regard to whether, if he could, he would accomplish a hit on either [Alvin] Jackson or [the AUSA]," and therefore "[t]his is not one of those unusual cases where acceptance should be given where obstruction is assessed because in the Court's judgment, the testimony . . . regarding obstruction is particularly strong." Indeed, this case bears a striking resemblance to *United States v. Angel*, 355 F.3d 462, 478 (6th Cir. 2004). There, this court concluded that where, as here, the defendant had attempted to kill a witness and expressed no contrition for that conduct, the case was not extraordinary. *Id.* This court contrasted the facts of *Angel* with other cases found to be extraordinary, explaining:

> Attempting to have a witness killed . . . is far more serious than [the facts in other cases such as] ignoring government orders . . . lying about a legal name and criminal history . . . or making false statements to the grand jury . . . . Even more significant is the fact that, unlike the defendant in [another case determined by this court to be extraordinary, the defendant's] obstructive conduct happened *after* he was indicted. [The defendant] never attempted to undo that conduct, he offered no assistance to the authorities, and he went to trial to challenge the essential factual elements of guilt.

*Id.* Accordingly, Logan cannot establish that but for the government's breach of the plea agreement, the district court would have concluded that this was an extraordinary case and granted him the acceptance of responsibility reduction, when it found that an obstruction of justice enhancement was

appropriate. He has therefore failed to demonstrate that his substantial rights were affected. Resentencing is not required.

For essentially the same reasons, and contrary to Logan's other argument on appeal, we conclude that the district court did not clearly err by concluding that an obstruction of justice enhancement was appropriate, nor did it err by determining that this was not an extraordinary case where an acceptance of responsibility reduction was appropriate. As discussed, this case is analogous to *Angel* and the same substantive result is warranted.

## II.

McRae and Firempong raise two common issues on appeal, and we will address those issues together. First, McRae and Firempong argue that venue was improper in the Western District of Michigan. Specifically, Firempong argues that venue was improper as to him because his involvement in the conspiracy included the purchase of a motorhome using drug money; the motorhome was subsequently used to transport drugs to and from Michigan. The motorhome purchase occurred in California, not Michigan, and Firempong therefore argues that venue was improper in Michigan. McRae argues that the government engaged in improper forum shopping by selecting the Western District of Michigan, where it was more likely to secure a conviction, particularly in light of the fact that McRae is African-American. Second, they argue that the district court erred by forcing the jury to deliberate late into the night. We disagree.

## A.

This court reviews de novo challenges to venue raised in the district court. *United States v. Zidell*, 323 F.3d 412, 420 (6th Cir. 2003). However, "the determination of the merits of a selective

prosecution claim is essentially a factual inquiry, [and therefore this court] review[s] such a determination for clear error." *United States v. Jones*, 159 F.3d 969, 976 (6th Cir. 1998).

1.

We conclude that Firempong forfeited his right to challenge venue, and even if he had not, venue was proper in the Western District of Michigan. "[O]bjections to defects in venue are usually waived if not asserted before trial[.]" *United States v. Grenoble*, 413 F.3d 569, 573 (6th Cir. 2005). However, where the defect is "apparent on the face of the indictment" and the defendant "does not have notice of the defect through other means, a conclusion of waiver is not appropriate." *Id.* Here, the indictment was very specific that Firempong was being charged with, among other things, conspiracy to launder money arising from the purchase of "various motor vehicles, including minivans and motorhomes" which in turn were used to transport drugs from California to Michigan. Firempong's entire venue argument is that because the motorhome purchase occurred in California, venue was improper in Michigan; however, he had notice from the indictment that the government theory of the case against him included that he purchased the motorhome using drug proceeds. Accordingly, because the nature of the alleged defect was apparent on the face of the indictment and the indictment provided Firempong with notice of the alleged defect, Firempong waived his right to challenge the propriety of the venue in this case.

But, even assuming that Firempong had not forfeited his right to challenge venue, venue was proper. Under the plain text of 18 U.S.C. § 1956(i)(2), venue for a money laundering conspiracy is proper "in any other district where an act in furtherance of the . . . conspiracy took place." The government bears the burden of showing by a preponderance of the evidence that venue is proper.

*United States v. Beddow*, 957 F.2d 1330, 1335 (6th Cir. 1992). In *Whitfield v. United States*, 543 U.S. 209, 218 (2005), the Supreme Court explained that, under § 1956(i), venue is proper: (1) in the district where venue would lie if the completed money laundering offense had been accomplished, or (2) any district where an "overt act in furtherance of the conspiracy" was committed. Moreover, the Supreme Court has held that venue is proper in a district where a co-conspirator has carried out overt acts even if the defendant never entered that district. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281 (1999).

Here, the government presented evidence that, among other things, Firempong was involved in a conspiracy to launder drug proceeds from drugs sold in Michigan. Drugs were transported from California to Michigan, and the proceeds were transported from Michigan to California; once in California, the proceeds were laundered through the purchase of vehicles, including the motorhome Firempong bought for Charles Jackson, Sr., the conspiracy's kingpin. Accordingly, the government established that an overt act in furtherance of the conspiracy—the sale of drugs—occurred in Michigan. *Whitfield*, 543 U.S. at 218. That Firempong never entered Michigan is immaterial, because his co-conspirators did for the purpose of selling the drugs that produced the proceeds that Firempong laundered. *Rodriquez-Moreno*, 526 U.S. at 281.

Firempong relies on one case in support of his argument, *United States v. Williams*, 274 F.3d 1079 (6th Cir. 2001). There, the connection between the defendant and Michigan, where trial was held, was a government informant who falsely told the defendant that he intended to sell drugs in Michigan. This court held that the government informant could not be a co-conspirator and

concluded that venue was improper. *Id.* at 1084. No such circumstances exist here. *Williams* is distinguishable and venue was proper in the Western District of Michigan.

2.

With regard to McRae, to the extent his venue argument is not race-based, the same result is warranted as for Firempong and for the same reasons—McRae only raised a venue defect on his motion for acquittal, not before trial. He has accordingly forfeited it. *Grenoble*, 413 F.3d at 573. To the extent his claim is race-based, he has also forfeited his right to challenge venue. This court has previously held that allegations of race-based forum shopping implicate Federal Rule of Criminal Procedure 12(b)(3)(A) and must be raised before trial. *United States v. Auston*, 355 F. App'x 919, 923 (6th Cir. 2009).

However, in any event, McRae has failed to show that his due process rights were violated. McRae's argument appears to be that the government chose Michigan as a forum because it could obtain a more racially favorable jury pool in Michigan. To show that a prosecutorial decision violated due process, a defendant bears the burden to show not only that the prosecution's alleged misconduct produced a discriminatory result, but that the prosecution was motivated by discriminatory intent. *Jones*, 159 F.3d at 976. McRae has shown neither. He simply asserts in a conclusory manner that Michigan is less racially diverse than California. Even if this were enough to meet his burden to show that the prosecution had a discriminatory effect (and it is not), he still would fail to meet his burden with regard to discriminatory intent. He points to no evidence, most likely because none appears to exists, that the decision to prosecute the case in Michigan instead of California was motivated by race.

B.

Firempong and McRae both correctly note that a district court cannot force the jury to keep deliberating in order to coerce a verdict. *See Jenkins v. United States*, 380 U.S. 445, 446 (1965). But that is not what occurred here. The jury sent the court a note asking if court staff could contact their families to let them know that the jurors were still at the courthouse—the jury did not ask to be excused for the evening. In fact, the district court noted that, in its estimation, the jury was not "shy in asking for things. If they request that they want to go home, then I'll grant that request. But until I hear from them on that subject, I'm going to let them continue." But no such request ever came, and so there was no occasion to dismiss the jury for the evening. Simply put, defendants' characterization that the district court held the jurors back and forced them to continue deliberating and coerced a verdict is unsupported by the record.

III.

We now turn to issues raised exclusively by Firempong. He raises issues related to the admission of evidence; whether the evidence was sufficient to convict him of cocaine conspiracy; the district court's calculations with regard to the drug quantity and forfeiture money judgment attributable to him; and the substantive reasonableness of his sentence. Each of his arguments is meritless.

A.

Firempong's first issue on appeal concerns a letter from Scott Herman, Firempong's former cellmate, to the government. In the letter, Herman says he is willing to testify against Firempong, and that, in jail, Firempong indicated that he was directly involved in the cocaine conspiracy.

Ultimately, Herman testified against Firempong at trial, and the letter was admitted following Firempong's counsel's cross-examination of Herman. The district court admitted the letter as a prior consistent statement under Federal Rule of Evidence 801(d)(1)(B). On appeal, Firempong argues that the letter was improperly admitted.

A district court's error "with  respect to the admission of evidence is subject to harmless error analysis, and it is well settled that an error which is not of a constitutional dimension is harmless unless it is more probable than not that the error materially affected the verdict." *United States v. Davis*, 577 F.3d 660, 670 (6th Cir. 2009) (internal citation and quotation marks omitted). Here, even assuming without deciding that the admission of Herman's letter constituted error, the error was harmless because it was cumulative. Herman's letter indicated that, while they were incarcerated together, Firempong told Herman that Firempong was involved with kingpin Charles Jackson, Sr., who Firempong also knew as "Canty," that "Canty" introduced Firempong to the "cocaine business," and that Firempong became involved in dealing drugs because of his gambling addiction. These are the same facts to which Herman testified on the stand and on which he was cross-examined by Firempong's counsel. Accordingly, because the information in the letter was cumulative to Herman's in-court testimony, we conclude that the letter's admission did not materially affect the verdict.

## B.

Firempong next argues that the district court erred by admitting evidence that he had not filed tax returns for years coinciding with the conspiracy. Specifically, Firempong argues that this evidence was inadmissible under Federal Rule of Evidence 404(b). We disagree.

We review a district court's decision whether to admit or exclude evidence for an abuse of discretion. *United States v. Lopez-Medina*, 461 F.3d 724, 741 (6th Cir. 2006). However, we review "for clear error the court's factual determinations that underpin its legal conclusions." *United States v. Scott*, 693 F.3d 715, 721 (6th Cir. 2012) (internal citation and quotation marks omitted).

Rule 404(b), which governs the admissibility of "other acts" or "other crimes" evidence, does not apply to the evidence of Firempong's failure to file tax returns. "Evidence which is probative of the crime charged and does not solely concern uncharged crimes is not 'other crimes' evidence [under Rule 404(b)]." *United States v. DeClue*, 899 F.2d 1465, 1472 (6th Cir. 1990). Firempong was charged with participating in a money laundering conspiracy. "Failure to file tax returns is relevant to the existence of, and a defendant's participation in, a money laundering conspiracy." *United States v. Mitchell*, 613 F.3d 862, 866 (8th Cir. 2010). The district court, accordingly, did not abuse its discretion when it admitted this evidence. Moreover, in *Mitchell*, the court concluded that the admission of tax return evidence in a money laundering conspiracy case was not significantly more prejudicial than probative such that exclusion under Rule 403 was appropriate. *Id.* Here, Firempong argues in general terms that the evidence was prejudicial and caused him not to testify, but he makes no argument regarding why that prejudice significantly outweighs the evidence's probative value.

C.

Next, Firempong argues that there was insufficient evidence to convict him of cocaine conspiracy. Specifically, he argues that none of the witnesses involved in the conspiracy testified that he was involved in the sale or distribution of cocaine, and in fact some witnesses testified that

he was not involved at all. Firempong argues that the only evidence the government presented of

his involvement in the cocaine conspiracy was the testimony of Scott Herman, a jailhouse informant.

We review de novo a claim of insufficient evidence and assess the evidence "in the light

most favorable to the prosecution to determine whether any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt." *United States v. Campbell*, 549 F.3d

364, 374 (6th Cir. 2008). "[This court] will reverse a judgment based on a finding of insufficient

evidence only if the judgment is not supported by substantial and competent evidence upon the

record as a whole." *Id.* Further, this court must make all reasonable inferences in support of the

jury's verdict. *Id.*

> [A]n appellate court's reversal for insufficiency of the evidence is in effect a
> determination that the government's case against the defendant was so lacking that
> the trial court should have entered a judgment of acquittal, rather than submitting the
> case to the jury. *Lockhart v. Nelson*, 488 U.S. 33, 39, 109 S. Ct. 285, 102 L. Ed. 2d
> 265 (1988). Because the Double Jeopardy Clause affords a defendant who obtains
> a judgment of acquittal absolute immunity from further prosecution for the same
> crime, the Supreme Court has stated that "it ought to do the same for the defendant
> who obtains an appellate determination that the district court should have entered a
> judgment of acquittal." *Id.* Accordingly, defendants bear a heavy burden when
> asserting insufficiency of the evidence arguments. *United States v. Spearman*, 186
> F.3d 743, 746 (6th Cir.1999).

*United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010). Moreover, this court must "resolve

all issues of credibility in favor of the fact finder's verdict." *United States v. Wade*, 318 F.3d 698,

701 (6th Cir. 2003) (internal brackets, citation, and quotation marks omitted). Circumstantial

evidence "is entitled to the same weight as direct evidence[.]" *United States v. Farley*, 2 F.3d 645,

650 (6th Cir. 1993), and "[c]ircumstantial evidence alone is sufficient to sustain a conviction and

such evidence need not remove every reasonable hypothesis except that of guilt[.]" *Wettstain*, 618

F.3d at 583 (internal citation omitted). "To prove that a conspiracy existed, the government need not show a formal written agreement. A showing of tacit or mutual understanding among the parties is sufficient." *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (citation and quotation marks omitted).

The elements of drug trafficking conspiracy under 21 U.S.C. § 846 are: "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996). The government presented sufficient evidence to convict Firempong of drug trafficking conspiracy.

First, Herman's testimony supported the conclusion that Firempong was guilty. Herman testified that Firempong told him that he was involved in the "cocaine business" and that a man named Jackson, nicknamed "Canty," introduced him to the drug trade. Herman testified that Firempong told him that the reason he got involved with the drug trade was because he had a gambling problem and enjoyed living a lavish lifestyle. Herman's letter also indicated that Firempong knew that the cocaine traveled to Michigan. Firempong argues that Herman's testimony is the only direct evidence of his involvement in the drug trafficking conspiracy, whereas other witnesses denied his involvement in the drug trafficking conspiracy, and he is correct. However, this is of no consequence. It is the jury's role to assess witness credibility. The jury apparently believed Herman in part or in total, as demonstrated by the fact that it convicted Firempong. At its core, Firempong's argument is that Herman is not to be believed, but that is not a determination we are permitted to make. It is well-established that "this court may not retrospectively assess the credibility of witnesses." *United States v. Ross*, 703 F.3d 856, 883 (6th Cir. 2012).

Second, there was other evidence of Firempong's involvement in the conspiracy. Firempong and Charles Jackson, Sr. were close friends who attended basketball games together. The two threw lavish parties together. Firempong knew that Charles Jackson, Sr. did not have a job and used aliases. Despite this, Firempong made a $200,000 motorhome purchase for Charles Jackson, Sr., using Charles Jackson, Sr.'s money. Charles Jackson, Sr. testified that the money used for the motorhome purchase was drug proceeds. Charles Jackson, Sr. testified that when he gave Firempong the money, it was in cash in paper bags. Firempong never asked where the money came from. The government's financial analyst expert, Frank Scartozzi, testified that the money for the motorhome, derived from drug trafficking, was funneled through various businesses either owned or controlled by Firempong. Charles Jackson, Sr. testified that the motorhome was used in furtherance of the cocaine conspiracy.

In short, the evidence presented at trial showed that Firempong regularly and frequently associated with drug dealers, accepted drug proceeds, and laundered the drug proceeds through his businesses to purchase the motorhome, which in turn was used to transport drugs and money in furtherance of the cocaine conspiracy. This, coupled with Herman's testimony, which the jury apparently found credible, was sufficient to convict him. Firempong's argument is without merit.

D.

Firempong next raises challenges to the district court's calculations at sentencing as to the amount of drugs attributable to Firempong and the amount of the forfeiture money judgment. However, there was no error with regard to either.

1.

This court reviews a district court's factual finding of a drug quantity for clear error. *United States v. Gibbs*, 182 F.3d 408, 440 (6th Cir. 1999). "[This court] review[s] the district court's interpretation of the federal forfeiture laws de novo. But the district court's findings of fact are reviewed under a clearly erroneous standard and the question of whether those facts are sufficient to constitute a proper criminal forfeiture is reviewed de novo." *United States v. O'Dell*, 247 F.3d 655, 679 (6th Cir. 2001) (internal citations omitted).

2.

"If the exact amount of drugs is undetermined, 'an estimate will suffice, but . . . a preponderance of the evidence must support the estimate.' *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990); *United States v. Hernandez*, 227 F.3d 686, 699 (6th Cir. 2000) ('Approximations are completely appropriate.')." *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008). U.S.S.G. § 1B1.3(a)(1)(B) provides that a defendant's offense level should be determined based on, "in the case of jointly undertaken criminal activity[,] . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity[.]" This court has held that "this subsection requires that the district court make particularized findings with respect to both the scope of the defendant's agreement and the foreseeability of his co-conspirators' conduct before holding the defendant accountable for the scope of the entire conspiracy." *United States v. Campbell*, 279 F.3d 392, 400 (6th Cir. 2002).

In the instant case, there was a preponderance of evidence that Firempong was involved in the drug trafficking conspiracy and that at least 150 kilograms of cocaine were foreseeable to him.

Firempong was good friends with Charles Jackson, Sr. and knew that Jackson, Sr. had no job or apparent source of income from a legal job. Despite this knowledge, Firempong purchased a motorhome for over $200,000 using cash given to him in paper bags by Charles Jackson, Sr. Firempong then used his business interests to launder the money for that purchase. That motorhome was driven off the lot by Charles Jackson, Sr., not Firempong, and ownership paperwork was in Jackson's name, not Firempong's. Co-conspirator James Dylan Hayes testified that this motorhome was used to transport at least 70 kilograms of cocaine to Michigan from California per month for several years. In short, there was a preponderance of circumstantial evidence for the conclusion that Firempong knew that Charles Jackson, Sr. was a drug dealer, and that Firempong knew about or was directly involved in the drug trafficking conspiracy even without the testimony or letter of Scott Herman, who testified that Firempong said he was directly involved in the drug conspiracy. In light of the drug quantities transported in the motorhome, we conclude that the district court did not clearly err by determining that over 150 kilograms of cocaine were foreseeable to Firempong.

3.

Firempong's argument with regard to the district court's forfeiture calculation presents us with three distinct subissues. First, whether gross proceeds or net profits from the conspiracy should be used to calculate the amount of the money judgment; second, whether joint and several liability is proper for drug conspiracy proceeds; and third, whether a court should limit the amount of Firempong's money judgment to those proceeds foreseeable to him. As the district court noted, these issues have not specifically been addressed by our court.

Firempong does not challenge that money judgments are proper in cases such as this. *See United States v. Abdelsalam*, 311 F. App'x 832, 847 (6th Cir. 2009) ("A forfeiture action can take the form of a money judgment . . . ."). Firempong does challenge, however, the district court's conclusion that gross proceeds should be used when calculating the amount of the money judgment. The forfeiture statute, 21 U.S.C. § 853(a)(1), requires the forfeiture of "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly" as a result of the person's criminal conduct. However, the statute does not define "proceeds." Although we have not weighed in on this issue, other circuits have concluded that the term "proceeds" in the statute refers to gross proceeds, not merely net profits. *See, e.g.*, *United States v. Olguin*, 643 F.3d 384, 400 (5th Cir. 2011) (district court did not err by concluding that forfeiture should be calculated using "[gross] proceeds-not-[net]-profits"); *United States v. Heilman*, 377 F. App'x 157, 211 (3d Cir. 2011) (same); *United States v. Bucci*, 582 F.3d 108, 123 (1st Cir. 2009). Our sister circuits reached this conclusion largely on the basis of examining the plain language of 21 U.S.C. § 853. For example, the *Bucci* court noted that § 853 also uses the phrase "profits or proceeds," and "[t]o interpret the term 'proceeds' in the phrase 'profits or other proceeds' to mean profits would render the word 'profits' redundant." *Id.* at 123. Consequently, the court concluded, the statute's use of the phrase "proceeds" must refer to gross proceeds. *Id.* at 124. The *Heilman* court engaged in the same analysis and reached the same conclusion. *Heilman*, 377 F. App'x at 211. We find the reasoning of these courts persuasive. Moreover, we note that Firempong baldly asserts that the district court erred by relying on gross proceeds, yet makes no argument as to why; he cites no authority for his position, nor does he extrapolate from his premise of error. Accordingly, in light of the fact that the

district court based its conclusion on persuasive existing case law and the fact that Firempong has

not offered any reason to depart from the district court's determination, we conclude that the district

court was correct in its holding that gross proceeds should determine the baseline for calculating the

amount of the forfeiture.

Second, the district court concluded that joint and several liability applies to 21 U.S.C. § 853.

Again, the Sixth Circuit has not addressed this issue. However, it appears that the circuits that have

addressed the issue have concluded that the statute mandates joint and several liability among co-

conspirators for the proceeds of a drug conspiracy. *See, e.g.*, *United States v. Roberts*, 660 F.3d 149,

165 (2d Cir. 2011), cert. denied, 132 S. Ct. 1640 (2012) ("In the case of a narcotics conspiracy, this

mandatory liability is joint and several among all conspirators."); *United States v. Van Nguyen*, 602

F.3d 886, 904 (8th Cir. 2010) (a defendant "may be held jointly and severally liable for all of the

foreseeable proceeds of the conspiracy"); *United States v. Pitt*, 193 F.3d 751, 765 (3d Cir. 1999)

("21 U.S.C. § 853(a)(1) imposes joint and several liability with respect to forfeiture."). Firempong

does not challenge that joint and several liability applies to 21 U.S.C. § 853.

Third, although we have not ruled on the issue, as the district court noted, most circuits limit

the amount of proceeds attributable to a defendant to those reasonably foreseeable to that defendant.

*See, e.g.*, *Van Nguyen*, 602 F.3d at 904*; United States v. White*, 116 F.3d 948, 951 (1st Cir. 1997);

*United States v. Jarrett,* 133 F.3d 519, 531 (7th Cir. 1998) ("Our circuit holds a conspirator

responsible for the amount of drugs that conspirator actually distributes, as well as for any quantity

distributed by the conspiracy that was reasonably foreseeable to the conspirator."). *But see United*

*States v. Browne*, 505 F.3d 1229, 1279 (11th Cir. 2007) (co-conspirator can be held responsible even

for unforeseeable proceeds of conspiracy). Firempong does not dispute that foreseeability is the proper test, but argues that the district court clearly erred when it concluded that over $40,000,000 in proceeds was foreseeable to him. We disagree. The analysis on this point is similar to the analysis regarding drug quantity attributable to Firempong. The forfeiture amount was arrived at based upon the district court's determination that significant circumstantial evidence supported the conclusion that Firempong knew that his friend Charles Jackson, Sr. was a drug dealer and used the motorhome Firempong purchased in furtherance of the cocaine conspiracy. As the district court noted, Firempong must have been "woefully blind not to know" that his friend was a drug dealer and that when Charles Jackson, Sr. asked Firempong to purchase a motorhome for him, it would be used in drug trafficking activities. The district court then calculated: (1) that based on Hayes' testimony that he would transport at least 70 kilograms of cocaine in the motorhome at least once per month; (2) that these monthly trips happened for 32 months based on the timing of when the motorhome was purchased to when the conspiracy ended; (3) that the per-kilogram price Jackson charged was $18,000; and (4) that $40,000,000 was foreseeable to Firempong.[1] We agree with the district court's foreseeability analysis and with its final calculation. The district court did not clearly err in its forfeiture determination.

---

[1]The total amount of the forfeiture money judgment was actually $40,574,951.20 and included the amount of the drug proceeds foreseeable to Firempong, as well as the value of some items recovered during a search of Firempong's home.

E.

Finally, Firempong argues that his sentence for cocaine conspiracy was substantively unreasonable. We disagree. Whether a sentence is substantively reasonable is reviewed for an abuse of discretion. *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). However, reasonableness is itself an appellate standard of review. *Id.* "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *Id.* "A properly calculated within-guidelines sentence will be afforded a rebuttable presumption of reasonableness on appeal." *Id.*

Firempong does not contest that the district court properly calculated the Guidelines nor that his sentence falls within the Guidelines; in fact, Firempong concedes that his sentence was within the Guidelines. Accordingly, his sentence is presumptively reasonable, and Firempong fails to overcome that presumption.

Firempong argues there was no evidence that he was involved in drug trafficking and therefore his sentence is presumptively unreasonable. However, Firempong ignores the evidence developed at trial of his close friendship with Charles Jackson, Sr., a drug dealer, the fact that he laundered money for the drug traffickers, and the testimony of Herman that Firempong said he was a drug dealer himself.

Additionally, "[t]his court has held that although a sentence should reflect the considerations listed in § 3553(a), there is no requirement that the district court engage in a ritualistic incantation of the § 3553(a) factors it considers. However, the district court's opinion should be sufficiently

detailed to reflect the considerations listed in § 3553(a)." *United States v. McBride*, 434 F.3d 470, 474 (6th Cir. 2006) (internal citation and quotation marks omitted). Here, the district court explicitly considered the § 3553(a) factors when imposing Firempong's sentence.

Firempong asserts that the sentence is unreasonable because of Firempong's age, but the district court noted that Firempong was 60 years old and concluded that he should not be treated any differently because of his age. Firempong also argues that he has a minimal criminal history. The district court concluded that, although it was "mystified" how a doctor of Firempong's stature could get involved in a conspiracy such as this one, "[t]he court concludes that the doctor knew precisely what he was doing, and why he was doing it." In short, the district court was quite thorough when considering Firempong's sentence, and Firempong has done little more than assert in a conclusory manner that his sentence was substantively unreasonable. This alone distinguishes this case from the one on which Firempong principally relies, *United States v. Delgadillo*, 318 F. App'x 380, 386–87 (6th Cir. 2008), where this court found a sentence substantively unreasonable because the district judge "just briefly mentioned" § 3553(a) and gave no reason for "a 20-year sentence of a first offender of a nonviolent crime." By contrast, here, the district court gave ample reasons for its sentencing decision, including by applying the § 3553(a) factors. The sentence is not unreasonable simply because Firempong is dissatisfied with it.

IV.

We now turn to issues raised exclusively by McRae. McRae raises issues regarding the denial of his new trial motion, ineffective assistance of counsel, and the admission of evidence. Upon review, we conclude that each of his arguments is meritless.

A.

McRae first argues that the district court erred when it denied his motion for a new trial and that we should reach the merits of his ineffective assistance of counsel claim on direct appeal. We disagree.

This court reviews for an abuse of discretion the district court's decision whether to grant a new trial. *United States v. Pierce*, 62 F.3d 818, 823 (6th Cir. 1995). "An abuse of discretion occurs when the lower court relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard. An abuse of discretion may also be found when the reviewing court is firmly convinced that a mistake has been made, i.e., when we are left with a definite and firm conviction that the trial court committed a clear error of judgment." *United States v. True*, 250 F.3d 410, 422 (6th Cir. 2001) (internal citation and quotation marks omitted).

The district court noted that the reason McRae moved for a new trial was so that he could obtain an evidentiary hearing to pursue his claim for ineffective assistance of counsel. However, the only factual basis for ineffective assistance in the new trial motion was that McRae's trial counsel, Marvin Barnett, had attempted to extort money from McRae—according to McRae, Barnett declined to file a motion for mistrial unless McRae paid him an additional $50,000. The factual basis for McRae's claim lies outside the existing record. Indeed, there is virtually no evidence in the existing record regarding this claim. McRae's motion for a new trial failed to present any evidence beyond an unsigned affidavit bearing McRae's name and an affidavit from McRae's wife alleging that Barnett had attempted to extort McRae. This court has recognized that district courts are entitled to great deference when reviewing motions for new trials, *United States v. Breinig*, 70

- 25 -

F.3d 851, 851 (6th Cir. 1995), and that new trial motions are "disfavored and should be granted with caution." *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001). Moreover, in most cases, ineffective assistance of counsel claims are properly brought in a collateral proceeding under 28 U.S.C. § 2255 rather than on direct appeal. *See, e.g., United States v. McCarty*, 628 F.3d 284, 295 (6th Cir. 2010). In light of the paucity of evidence regarding the alleged extortion, we are not left with a "definite and firm conviction that the trial court committed a clear error of judgment" when it concluded that McRae's ineffective assistance claim should be brought under § 2255, and not on direct review, and denied his motion for a new trial. *True*, 250 F.3d 410, 422.

For similar reasons, we decline to address the merits of McRae's ineffective assistance of counsel claim. "Except in rare circumstances," this court does not review ineffective assistance of counsel claims on direct appeal because "claims of ineffective assistance of counsel must be addressed in the first instance by a district court pursuant to a claim under 28 U.S.C. § 2255." *United States v. Gunter*, 620 F.3d 642, 643 n.1 (6th Cir. 2010). Direct appeal is only an appropriate forum for resolving such claims where the claim "either depend[s] entirely upon facts within the record or that present[s] purely legal questions." *Angel*, 355 F.3d at 469. However, McRae's ineffective assistance of counsel claim is based on two factual premises not contained in the trial record: Barnett's alleged attempt at extorting McRae, and Barnett's alleged threats to witness Tommie Hodges. As explained, there is insufficient evidence on the record for this court to review a claim of ineffective assistance of counsel based on Barnett's alleged extortion. Although there is some evidence in the record regarding Barnett's alleged threats to Hodges, there is insufficient evidence for this court to review McRae's ineffective assistance claim on that basis. The evidence

of the alleged threats already in the record primarily consists of the transcript of an ex parte conference before a different district judge than the one trying McRae's case, at which neither Barnett nor a representative of the government was present.  Although the district court later reviewed the transcript of the ex parte conference with all parties present and gave Barnett an opportunity to explain himself, the purpose of that proceeding was not to permit McRae to develop a record with which to advance an ineffective assistance claim.  Accordingly, any claim predicated on Barnett's alleged witness intimidation would benefit from further factual development in a collateral proceeding, and we decline to reach the merits of McRae's ineffective assistance of counsel claim on that basis.

## B.

At trial, the government was permitted to introduce evidence that McRae's home burned down within a day of the police executing a search warrant at the home.  McRae argues that this evidence implied that he was the arsonist and therefore amounted to improper character evidence under Federal Rule of Evidence 404(b).  We disagree.

A district court's decision whether to admit or exclude evidence is reviewed for an abuse of discretion.  *Lopez-Medina*, 461 F.3d at 741.  The admission of this evidence was objected to at trial by McRae's counsel—accordingly, it is preserved for our review.  Preserved, non-constitutional errors, such as those arising from the admission of evidence, are harmless and not grounds for reversal unless the admission of the evidence materially affected the verdict.  *Davis*, 577 F.3d at 670.

McRae's claim is meritless.  Even if the testimony regarding the specific timing of the fire (within 24 hours of the search warrant's execution) could be construed as Rule 404(b) evidence, and

even assuming *arguendo* that the testimony was erroneously admitted, McRae has failed to establish that its admission "materially affected the verdict" or affected the verdict at all. *Davis*, 577 F.3d at 670. McRae makes no argument whatsoever regarding harmless error in his appellate brief. He simply asserts that the testimony was admitted in error, ignoring entirely that error is not reversible if it is harmless.

## C.

At trial, Hodges invoked his Fifth Amendment privilege against self-incrimination and refused to testify. Consequently, on McRae's counsel's motion, the district court instructed the jury to disregard Hodges' testimony in its entirety. This occurred the day after Hodges testified. McRae now argues that the district court erred by waiting a day to strike Hodges' testimony from the record, rather than striking it immediately. We disagree.

McRae's counsel failed to object to the timing of the limiting instruction below—accordingly, our review is for plain error. *United States v. Wallace*, 597 F.3d 794, 798 (6th Cir. 2010). This court has held that "[a] delayed limiting instruction is no basis for reversal." *United States v. Fraser*, 448 F.3d 833, 843 n.4 (6th Cir. 2006). Accordingly, McRae has failed to establish error, let alone plain error.

## V.

For the foregoing reasons, we affirm defendants' convictions and sentences.