[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15239
Non-Argument Calendar
_____

D.C. Docket No. 7:12-cr-00006-HL-TQL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDILBERTO RIVIERA-SOLONA,
a.k.a. Eddie Riviera,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(September 25, 2013)

Before HULL, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

After pleading guilty, Edilberto Rivera-Solona[1] appeals his sentence for possession with intent to distribute over 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(ii).  On appeal, Rivera-Solona argues that the government breached the plea agreement by failing to object to the district court's imposition of a two-level firearm enhancement under U.S.S.G. § 2D1.1(b)(1).  Rivera-Solona also raises sentencing claims.  After review, we affirm Rivera-Solona's conviction and sentence and dismiss his sentencing claims pursuant to the sentence-appeal waiver in the plea agreement.

## I.  BACKGROUND

### A.    Arrest and Indictment

In 2011, agents with an FBI task force conducted surveillance on Defendant Rivera-Solona, whom they suspected of cocaine distribution.  Agents watched as Rivera-Solona drove to his girlfriend's father's residence in Coolidge, Georgia, where he walked around in the woods behind the residence, entered a shed and the residence and then placed a package inside his car.  After conducting a traffic stop, agents found approximately 1 kilogram of cocaine in a child's car seat in Rivera-Solona's car.  In the woods behind the Coolidge residence, agents found cocaine wrappings.

---

[1]The defendant's last name was misspelled as Riviera-Solona in the indictment.  This opinion uses the correct spelling, Rivera-Solona.

2

With the consent of Rivera-Solona's girlfriend, agents also searched Rivera-Solona's own residence in Norman Park, Georgia.  In the Norman Park residence, agents found $46,640 in the master bedroom.  They also found a rifle and a shotgun.

A federal grand jury indicted Rivera-Solona with one count of possession with intent to distribute over 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(ii).

## B.    Plea Agreement

Subsequently, Defendant Rivera-Solona entered into a written plea agreement, wherein Rivera-Solona pled guilty to the charged drug offense, and the government agreed not to pursue any additional, known federal charges.  The government also agreed to consider recommending variances or departures based on Rivera-Solona's cooperation with the government.

Among other things, the plea agreement provided that: (1) Rivera-Solona would plead guilty with the understanding that the district court was not bound by any estimate of the advisory sentencing range and had discretion in choosing a sentence; (2) Rivera-Solona would not be permitted to withdraw his guilty plea on the basis that the probation officer or the district court calculated a different guidelines range than he anticipated; and (3) Rivera-Solona faced a statutory minimum five-year sentence and a statutory maximum forty-year sentence.

The plea agreement contained a sentence-appeal waiver.  Under this provision, Rivera-Solona agreed to waive his right to any appeal of his sentence, either direct or collateral, unless the district court "impose[d] a sentence that exceed[ed] the advisory guideline range" or the government appealed first.

The plea agreement also contained a stipulation of fact.  At the outset, the stipulation stated that the parties understood that the stipulation was not binding on the district court and that the district court might "accept this stipulation as written or in its discretion with the aid of the Pre-Sentence Report determine the facts relevant to sentencing."  The stipulation stated that the parties agreed that the government could prove beyond a reasonable doubt, inter alia, that: (1) while conducting surveillance, agents followed Rivera-Solona as he drove to the Coolidge residence and observed him loading items into his car from both the house and a shed on the property; (2) when agents conducted a traffic stop, they found approximately 1 kilogram of cocaine inside a child's car seat in Rivera-Solona's car; (3) pursuant to a search warrant, agents searched the Coolidge residence; (4) with the consent of Rivera-Solona's girlfriend, agents conducted a search of the Norman Park residence and found $43,640 in the master bedroom closet; and (5) laboratory testing confirmed that the substance found in the car was cocaine.

In addition, the parties agreed that there was insufficient evidence to support a firearms enhancement under U.S.S.G. § 2D1.1(b)(1) or to prohibit application of the safety-valve, as follows:

> The government and Defendant further stipulate that there is insufficient evidence to support the application of the enhancement found at U.S.S.G. § 2D1.1(b)(1) or to prohibit the application of U.S.S.G. § 5C1.2(a)(2) in that the firearms recovered in this case were not shown to be possessed by the Defendant, nor were there narcotics recovered from the residence in which the firearms were recovered.

## C.    Plea Hearing

At Rivera-Solona's plea hearing, the district court ensured that Rivera-Solona was competent to enter a plea and reviewed the indictment and plea agreement with him. Rivera-Solona stated that he had discussed the case with his attorney and was satisfied with his representation. Rivera-Solona also informed the district court that he had reviewed, understood, signed, and initialed the plea agreement. He confirmed that the plea agreement was the complete agreement and that he understood that its terms were not binding on the district court.

The district court had the prosecutor read the plea agreement's stipulation of fact out loud. Rivera-Solona indicated that he understood the stipulation of fact and agreed that it was a true statement of his conduct.

The district court also reviewed the sentence-appeal waiver. Rivera-Solona confirmed that he understood he was waiving his right to appeal his sentence, either on direct appeal or collaterally, unless his sentence exceeded his advisory

5

guidelines range or he had a claim for ineffective assistance of counsel. The district court determined that there was a sufficient factual basis for the plea and that the plea was entered freely and voluntarily.

## D.    Presentence Investigation Report

The presentence investigation report ("PSI") reported facts consistent with the plea agreement's stipulation of fact. However, the PSI also stated that a shotgun and rifle were recovered from the Norman Park residence and that Rivera-Solona's girlfriend "advised agents that the defendant had kept the firearms in a shed at the [Coolidge] residence until recently when he brought them to [the Norman Park] residence."

The PSI recommended: (1) a base offense level of 26, pursuant to U.S.S.G. §§ 2D1.1(a)(3) and (c)(7), for possessing 992.8 grams of cocaine; (2) a 2-level dangerous weapons enhancement under § 2D1.1(b)(1); and (3) a 3-level acceptance of responsibility reduction under § 3E1.1, yielding a total offense level of 25. The PSI explained that the dangerous weapons enhancement applied because Rivera-Solona had previously kept the guns in a shed where he conducted his cocaine trafficking activities. Based on a total offense level of 25 and a criminal history category I, the PSI initially calculated an advisory guidelines range of 57 to 71 months. However, because Rivera-Solona faced a statutory

minimum sentence of five years, the PSI adjusted the advisory guidelines range to 60 to 71 months.  See U.S.S.G. § 5G1.1(c)(2).

Neither Rivera-Solona nor the government filed any written objections to the PSI.

## E.    Sentencing Hearing

At the sentencing hearing, the parties did not raise any objections to the PSI's facts or guidelines calculations.  The government recommended a sentence within the advisory guidelines range calculated in the PSI.  Although neither party objected to the PSI's application of the § 2D1.1(b)(1) firearm enhancement, the district court explored the parties' reasons for stipulating in the plea agreement that there was insufficient evidence to support a firearm enhancement.

Specifically, the district court asked the prosecutor whether guns were involved in the case.  The prosecutor responded that although guns were found in one of the locations, the parties had agreed and stipulated that there was insufficient evidence to support application of the firearm enhancement.  The district court asked about the evidence with respect to the guns.  The prosecutor stated that the guns were not in Rivera-Solona's possession when they were found, but were found in a residence connected to Rivera-Solona, although not the residence where the drugs were found.

The district court inquired about the $40,000, and the prosecutor confirmed that the cash was found in the same residence as the guns. The district court then asked whether the government had concluded that there was sufficient evidence to connect the $40,000 to Rivera-Solona and retained the money. The prosecutor stated that he was not sure. The district court further stated "I would like some explanation as to why, if the money was somehow connected with the drugs and the Defendant and the guns were not somehow connected with the drugs or the Defendant."

Neither the prosecutor nor the defense attorney at the sentencing hearing was involved in the plea agreement negotiations. The prosecutor stated that "all [he could] go with is the stipulation . . . that there was not sufficient evidence to connect the guns to the drugs." Defense counsel concurred with the prosecutor, stating "[t]hose two lawyers who negotiated this plea agreement would certainly know more about what proof or lack of proof thereof they had with respect to the guns." Defense counsel stated that her understanding was that the two attorneys agreed "that the small evidence that they had would not support a finding . . . under the statute that the guns were connected in any way with the narcotics." At the district court's questioning, defense counsel stated that she believed the guns were found in the same residence as the money, but not in the same room. The prosecutor indicated that he knew only what was in the plea agreement and that

8

"the connections could not be sufficiently made . . . in an evidentiary way." The prosecutor also stated that he did not know whether the money was forfeited in state or federal proceedings.

The district court recessed to allow the parties to try and contact the attorneys who had negotiated the plea agreement. When the hearing resumed, the prosecutor reported that he had spoken with the government's attorney, and she had no specific information about where the guns were found. The prosecutor explained that the kinds of guns—a 410 shotgun and a 22-caliber rifle "rather than hand guns or sawed off shot guns entered into the thought process of the difficulty of proving the connection to the drugs." The prosecutor also confirmed that the money was administratively forfeited without a hearing after no one claimed it.

Defense counsel reported that she was unable to speak to the prior defense attorney who negotiated the plea agreement. Defense counsel pointed out, however, that according to commentary to the Sentencing Guidelines the firearm enhancement did not apply to a hunting rifle found in a closet, and that the two firearms could be considered hunting rifles. The district court explained that it had raised these questions because "it simply seems curious . . . that the case has come down as it has" and that it was "remarkable" that the government would ignore that the money was found in proximity to the two guns. The district court stated that it usually is "very deferential" to the government's decision to enter into a stipulation

9

and "generally give[s] them benefit of the doubt when they explain their decision," but that Rivera-Solona's case was "very unusual."

When the district court asked whether the parties had any objections to the PSI, the government and the defense both indicated they did not have objections. The district court reviewed the PSI's guidelines calculations, and defense counsel stated that she agreed with them. The district court then adopted the PSI calculations and the resulting 60- to 71-month range. After considering the 18 U.S.C. § 3553(a) factors, the district court imposed a 71-month sentence. After imposing the sentence, the district court asked whether Rivera-Solona had any objections to the sentence, and defense counsel stated that he did not.

## II.  DISCUSSION

### A.     Breach of the Plea Agreement

On appeal, Rivera-Solona argues for the first time that the government breached the plea agreement when it failed to object to the district court's imposition of the 2-level firearm enhancement, pursuant to U.S.S.G. § 2D1.1(b)(1). Ordinarily, we review whether the government breached the plea agreement de novo. United States v. Copeland, 381 F.3d 1101, 1104 (11th Cir. 2004). However, where, as here, the defendant failed to object to an alleged breach of the plea agreement before the district court, we review for plain error. United States v. Romano, 314 F.3d 1279, 1281 (11th Cir. 2002). Plain error exits when there is (1)

10

error, (2) that is plain, (3) that affected the defendant's substantial rights, and (4) that "seriously affect[ed] the fairness, integrity, or public reputation of the judicial proceedings." Id. at 1281. An error is plain if it is "clear or obvious, rather than subject to reasonable dispute." Puckett v. United States, 556 U.S. 129, 135, 129 S. Ct. 1423, 1429 (2009). For the reasons that follow, we conclude that the government's failure to object to the PSI's recommendation of a firearm enhancement and the district court's adoption of the PSI at sentencing was not a breach of the plea agreement, much less a "clear or obvious" breach.

"The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty." United States v. Horsfall, 552 F.3d 1275, 1281 (11th Cir. 2008) (quotation marks omitted). To determine whether the government breached the plea agreement, we look at the defendant's reasonable understanding of the agreement at the time he entered his plea. Id.

The express terms of the plea agreement did not obligate the government to do anything with respect to a § 2D1.1(b)(1) firearm enhancement. Instead, the government merely agreed to the legal conclusion that the evidence was insufficient to support such an enhancement. The plea agreement also recognized that the district court had the discretion to determine any pertinent facts by a preponderance of the evidence and was not bound by the parties' stipulation.

11

Moreover, the prosecutor's statements at Rivera-Solona's sentencing hearing were fully consistent with the stipulation's legal conclusion and its facts. In fact, both the prosecutor and defense counsel advised the district court that the firearms were not found in Rivera-Solona's possession when he was arrested or in the location where his drug distribution activities took place, but instead were found at another residence connected to him. The parties further advised the district court that the reason they believed there was insufficient evidence to support the firearm enhancement, despite the proximity of the firearms to the money, was the type of firearms found. During the district court's exploration of the parties' reasons for entering into the stipulation, the prosecutor did not say anything to undermine the stipulation's legal conclusion.

Even if it would be reasonable for Rivera-Solona to believe that the parties' legal stipulation prevented the government from advocating for application of the firearm enhancement, see United States v. Taylor, 77 F.3d 368, 370 (11th Cir. 1996), it would not be reasonable to expect the government also to affirmatively object to the application of the enhancement, even when the defendant himself does not object to it. See United States v. Benchimol, 471 U.S. 453, 455-56, 105 S. Ct. 2103, 2105 (1985) (stating that, unless specified in the plea agreement, the government is not required to "enthusiastically" commit itself to its obligations under the plea agreement because Federal Rule of Criminal Procedure 11 "speaks

12

in terms of what the parties in fact agree to, and does not suggest that such implied-in-law terms [be] read into [a plea] agreement"). Notably, Rivera-Solona does not cite any authority establishing that the government's promise not to recommend a particular sentencing enhancement also includes a promise to affirmatively object to that sentencing enhancement if the probation officer includes it in the PSI's calculations or if the district court imposes it. At the very least, there is no error that is plain in this case. See Puckett, 556 U.S. at 143, 129 S. Ct. at 1433

We also recognize that Rivera-Solona cites United States v. Boatner, 966 F.2d 1575 (11th Cir. 1992), but Boatner is materially distinguishable and did not require the government to object to the PSI or the district court's sentence.

In Boatner, the parties stipulated in the plea agreement to a particular drug quantity, the probation officer used a much larger drug quantity, and the defendant objected. 966 F.3d at 1577. Importantly, at sentencing the government affirmatively supported the probation officer's drug calculation. Id. The government stated that it had stipulated to the drug quantity because "[a]t the time [it] was what [the government] could prove," but that the probation officer had gathered information from "other cooperating witnesses" who had "provided independently" the additional drug amounts, and the probation officer had merely "done his duty in putting those into the report." Id. Further, the probation officer

13

even testified that he had actually obtained the additional drug amounts from two of the investigators, one an FBI agent.  Id. at 1577-78.

On appeal, this Court determined that the drug quantity stipulation was a stipulation of fact intended to bind the government and that the government had breached that stipulation of fact when it "introduced evidence through the presentence investigation report showing" that the defendant was involved with a larger drug amount.  Id. at 1578-79.  The Court concluded that "the government violated its agreement at the sentencing hearing when it attempted to bolster the presentence investigation report."  Id. at 1579.

This case is materially different from Boatner in at least two significant respects.  First, the defendant in Boatner objected to the information in the PSI that was inconsistent with the plea agreement.  Because the defendant in Boatner objected, Boatner says nothing about when and if the government breaches a plea agreement by failing to object to the PSI's calculations when the defendant also fails to object.

Second, the conduct in Boatner that breached the plea agreement was the government's investigators providing inconsistent information to the probation officer in an attempt to bolster the PSI.  At Boatner's sentencing hearing, the probation officer testified that government agents gave him the larger drug quantity.  Here, there is no such evidence, and Rivera-Solona does not contend that

14

the government breached the plea agreement in this way.  Thus, <u>Boatner</u> does not establish at all, much less plainly, that the government breached the plea agreement by failing to object to the PSI and the district court's firearm enhancement in Rivera-Solona's case.

Finally, we note that Rivera-Solona expressly agreed that the district court was not bound by the parties' stipulation and would determine the facts.  The facts in the PSI established that Rivera-Solona had stored the firearms in the shed at the Coolidge residence where he conducted his cocaine distribution activities and then moved them to the Norman Park residence shortly before his arrest.  The district court was fully aware of the parties' stipulation that there was insufficient evidence to support the firearm enhancement, having discussed it with the parties at length. The district court obviously disagreed with the parties given that, after exploring their reasons for reaching this legal conclusion, it adopted the PSI's guidelines calculations.  On this record, Rivera-Solona has not carried his burden to show plain error.

## B.    Sentencing Claims

Rivera-Solona raises two sentencing issues: (1) there was insufficient evidence to support the U.S.S.G. § 2D1.1(b)(1) firearm enhancement, and (2) his 71-month sentence is substantively unreasonable.

Rivera-Solona does not dispute that these claims fall within the scope of his sentence-appeal waiver.  Neither of the circumstances under which Rivera-Solona reserved his right to appeal his sentence has occurred.  Rivera-Solona's 71-month sentence did not exceed his advisory guidelines range of 60 to 71 months and has not been appealed by the government.  Further, Rivera-Solona does not contend that the sentence-appeal waiver is unenforceable because it was not made knowingly and voluntarily.  See United States v. Bushert, 997 F.2d 1343, 1351 (11th Cir. 1993) (stating that a sentence-appeal waiver will be enforced if it was made knowingly and voluntarily).

Instead, Rivera-Solona argues that the government's breach of the plea agreement "releases" him from the sentence appeal waiver.  Because, for the reasons already discussed, Rivera-Solona has not shown that the government breached the plea agreement, we need not address this issue.  Accordingly, we dismiss Rivera-Solona's appeal to the extent he raises these two sentencing claims barred by his sentence-appeal waiver.

**AFFIRMED IN PART, DISMISSED IN PART.**

16