NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  15a0396n.06

No. 14-1246

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 02, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| KYRECE TRAVONNE SMITH, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:    BOGGS and KETHLEDGE, Circuit Judges; and HELMICK, District Judge.[*]

BOGGS, Circuit Judge.  On July 23, 2013, Kyrece Smith pled guilty to conspiracy to distribute and possess with intent to distribute cocaine base.  In his plea agreement with the government, the parties stipulated that Smith was responsible for the distribution of 106.26 grams of cocaine base and approximately 55 pounds of marijuana.  The presentence report prepared by the United States Probation Office set out this stipulation, but recommended that Smith be sentenced based on a larger quantity of drugs.  Without objection from the government or Smith, the district court adopted the recommendation from the presentence report.

On appeal, Smith argues that the government violated the plea agreement by failing to object to the presentence report's recommendation that he be sentenced based on a larger quantity of drugs than stipulated to in the agreement.  We hold that the district court's sentencing did not result in plain error and therefore affirm.

_____

[*] The Honorable Jeffrey J. Helmick, United States District Judge for the Northern District of Ohio, sitting by designation.

I

On April 1, 2013, Defendant-Appellant Kyrece Smith was arrested along with his brother after attempting to sell 106.26 grams of cocaine base to a confidential informant. On May 22, 2013, a federal grand jury indicted Smith on one count of conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(iii), and one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) and 18 U.S.C. § 2. On July 22, 2013, Smith entered into a written plea agreement with the government. In the agreement, Smith agreed to plead guilty to the first count in the indictment, which charged him with conspiracy to distribute and possess with intent to distribute more than 28 grams of cocaine base.

A

Paragraph 4 of the plea agreement, which sets out various stipulations of fact and law between the parties, describes Smith's involvement in a pre-existing conspiracy to sell controlled substances. The agreement states that Smith disclosed in a proffer with the government that he conspired to obtain approximately one kilogram of cocaine per month from May 2012 through April 2013, convert it to cocaine base, and sell it. The government stipulated that "[t]his information concerning cocaine and cocaine base is proffer-protected and cannot be used to compute the Sentencing Guidelines in this case pursuant to the [relevant] proffer agreement." Most important for this appeal, the agreement also provides that: "For purposes of computing the Sentencing Guidelines in this case, the parties agree that [Smith] was responsible for the distribution of 106.26 grams of cocaine base and approximately 55 pounds of marijuana."

The plea agreement goes on to state that Smith "understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing" after consulting the United States Sentencing Guidelines. Moreover, it states that:

> [Smith] understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. [Smith] further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, the Defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all his obligations under this agreement. [Smith] understands that no one—not the prosecutor, [Smith's] attorney, or the Court—can make a binding prediction or promise regarding the sentence [Smith] will receive, except that it will be within the statutory maximum.

In exchange for Smith's plea and cooperation, the government specifically agreed to the following concessions: (1) to bring no further charges against Smith "for the distribution of cocaine base or possession of a firearm in furtherance of the offense of conviction"; (2) to dismiss other counts of the indictment as they applied to Smith; (3) not to file a supplemental information under 21 U.S.C. § 851 to increase the penalty for the offense of conviction; (4) not to oppose Smith's request for a two-level reduction of his offense level for acceptance of responsibility, absent uncooperative conduct by Smith; and (5) not to use the information provided through Smith's cooperation to enhance his sentence.

B

Smith pled guilty on July 23, 2013. At the plea hearing, the magistrate judge informed Smith about the role of the sentencing guidelines and explained that the district judge could choose a sentence within the recommended range "but is not required to." The magistrate judge stated that an advisory guidelines range would be "calculated by the [United States] Probation Office when it prepares the presentence report," and while Smith's attorney would be able to

give "a pretty good idea" of what the recommended range would be, he could not "guarantee . . . that his calculations are the final calculations." The magistrate judge explained that the parties could object to the Probation Office's calculations if they disagreed with them, and that failure to so object would constitute waiver. Throughout the plea hearing, the magistrate judge reiterated that the district court was "not a party to" the plea agreement and was not "bound by it," and that the court was not bound by any recommendation as to sentencing. The government attorney also noted that the plea agreement, which contained all of the promises made by the government, "is limited to the parties," and that there was "no agreement as to the final guideline range." Defense counsel concurred in this explanation.

Regarding the factual basis for the plea, the magistrate judge noted that the district court was "free to adopt . . . all of the factual stipulations in paragraph 4," subject to the agreement's terms, as well as Smith's statements at the plea hearing. The government attorney noted an "unusual" aspect of the plea agreement whereby "some of the defendant's proffered information," which "may not [be] consider[ed]" by the court "for purposes of calculating the sentencing guidelines," can be considered "for purposes of establishing the factual basis for the plea."

C

Following the plea hearing, the Probation Office prepared a presentence report ("PSR"), which noted that "the parties agree the defendant was responsible for distributing 106.26 grams of crack cocaine and 55 pounds of marijuana." The PSR, however, calculated Smith's guidelines range using specific offense-conduct information. Specifically, the PSR explained that:

> Mr. Smith's plea agreement stipulates his involvement in 106.26
> grams of crack cocaine, distributed on April 1, 2013, and 55
> pounds (24,948 grams) of marijuana under relevant conduct. . . .
> Notwithstanding, based on the offense conduct information, a total

of 230.93 grams of crack cocaine and 55 pounds of marijuana was attributed to Mr. Smith. This produces a marijuana equivalency of 849.59 kilograms.

The PSR determined this drug quantity based on the amount of crack cocaine recovered from Smith's shared residence and the amounts sold on Smith's behalf by his brother to a confidential informant in January and February 2013, as well as the 106.26 grams of crack cocaine and 55 pounds of marijuana noted in the plea agreement. The PSR explained that these amounts are "consistent with the unprotected admissions" by Smith's brother, are attributable to Smith, and are "not protected" by a proffer. By contrast, the PSR noted that the information regarding the one-kilogram-per-month of cocaine that Smith conspired to obtain and convert to cocaine base from May 2012 through April 2013 "is protected and has not been used in the guideline computations."

Using the larger drug quantity, the PSR determined the advisory guidelines range to be 100 to 125 months. Neither the government nor defense counsel objected to the PSR.

D

During this time, Smith purported to cooperate with government officials in a drug investigation. In February 2014, however, investigators determined that Smith warned one of the targets of the investigation and colluded with him to steal the money that the government planned to use in a controlled drug buy. Smith then fled on bond, and, on February 12, Smith "purposely rammed police vehicles" with his car and "resisted arrest causing injury to an officer" while the fugitive task force was apprehending him.

The district judge held Smith's sentencing hearing on February 20, 2014. On the basis of Smith's conduct subsequent to his guilty plea, the judge granted the government's motion to withdraw the substantial-assistance motion it had previously filed pursuant to U.S.S.G. § 5K1.1;

denied a sentencing reduction under § 3E1.1(a) for acceptance of responsibility; and applied a two-level enhancement for obstruction of justice under § 3C1.1. This resulted in an applicable guidelines range of 168 to 210 months. Neither the government nor defense counsel objected to any part of the PSR or the court's guidelines calculation regarding the applicable drug quantity. Believing that "[a] sentence towards the upper end of the advisory guideline range" was "appropriate," the district judge sentenced Smith to 204 months in prison.

On appeal, Smith asserts that the government violated the terms of the plea agreement by not objecting to the discrepancy between the drug quantities set out in the plea agreement and the PSR. Appellant Br. 8.

II

We normally review de novo whether the government's conduct violated a plea agreement. *United States v. Fields*, 763 F.3d 443, 453 (6th Cir. 2014). However, "[w]hen a defendant fails to object to the government allegedly violating his plea agreement, we must review the alleged violation for plain error alone." *United States v. Merlo*, 464 Fed. App'x 518, 522 (6th Cir. 2012). To demonstrate plain error, a defendant must show "(1) error (2) that 'was obvious or clear,' (3) that 'affected defendant's substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)).

III

Pursuant to the plea agreement in this case, the prosecutor agreed that for the purposes of computing the applicable guidelines range, Smith "was responsible for the distribution of 106.26 grams of cocaine base and approximately 55 pounds of marijuana." Smith asserts that this

stipulation imposed upon the prosecutor a duty to object to the PSR's use of a larger drug quantity when calculating Smith's guidelines range. He contends that the prosecutor violated this duty when he failed to "ask for a deletion" of "the additional drug amounts which were in excess of the stipulations" and thus "tacitly" approved "probation's position regarding the amount of drugs involved in the offense." Appellant Reply Br. 2.

A

In analyzing a claimed breach of a plea agreement, this court considers "what the defendant reasonably understood when he entered into the agreement." *Fields*, 763 F.3d at 453 (internal quotation marks and citation omitted). "[T]he most persuasive evidence" of the defendant's bargain "is found in the plain language" of the agreement. *United States v. Phibbs*, 999 F.2d 1053, 1081 (6th Cir. 1993). In consideration of the substantial sacrifice of constitutional rights that results from a defendant's decision to enter into a plea agreement, any "significant . . . promise or agreement" made by the prosecutor in connection therewith "must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). However, unless committed to do so under the agreement's specific terms, a prosecutor is not required to support "enthusiastically" every recommendation in a plea agreement. *United States v. Benchimol*, 471 U.S. 453, 455 (1985).

Here, Smith points to no language in the plea agreement evincing any promise by the prosecutor to object to the Probation Office's PSR. Indeed, the plea agreement explicitly stated that it was "limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority." *Cf. United States v. Garavaglia*, 1999 WL 220125, at *3 (6th Cir. Apr. 6, 1999) (finding no breach where the probation office suggested the application of a guidelines provision not

contained in the plea agreement, where the agreement stated that it "does not bind or obligate governmental entities other than the United States Attorney's Office"). The district court, without objection from either party, ultimately relied on the drug quantity set out in the PSR, and not the amount stipulated in the plea agreement. However, Smith was on notice that "the Court [was] not a party to [the plea] agreement and [was] under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed."[1]

Smith's argument that the government breached an implicit promise to object to the PSR has been rejected by this and other circuits under similar circumstances. Recently, in *United States v. Climer*, we considered a plea agreement that included a stipulation that the prosecutor would recommend a minimal-participant reduction. 591 F. App'x 403 (6th Cir. 2014). The guidelines calculation recommended in the PSR, however, did not include any such reduction; rather, the reduction was included only in a separate section presenting an alternative guidelines range based on the plea agreement's terms. *Id.* at 406. Like Smith here, the defendant in *Climer* argued that the prosecutor "had a duty to object" to the PSR's guidelines calculation to the extent it differed from the plea agreement. *Ibid.* In rejecting this argument, we stressed that there is "no law from this circuit that requires the Government to object to a probation officer's factual determinations in a PSR," and that the specific plea agreement did not itself impose that requirement on the prosecutor. *Ibid.* That the PSR in *Climer* contained an alternative guidelines

---

[1] Indeed, the sentencing guidelines' policy statement regarding plea agreements notes that "the court is not bound by the stipulation[s]" set out in a plea agreement's "written stipulation of facts relevant to sentencing," "but may with the aid of the presentence report, determine the facts relevant to sentencing." U.S.S.G. § 6B1.4(a), (d) (emphasis added); *see also* § 1B1.3 (a court can consider "all acts and omissions committed . . . by the defendant . . . during the commission of the offense of conviction" to determine the base offense level).

range incorporating the plea agreement's terms does not materially distinguish it from the PSR at issue here, which specifically noted the parties' stipulation regarding drug quantity.

In a closely analogous case, the Fifth Circuit considered a defendant's argument that the government breached a plea agreement stipulating that he should be held responsible for only 16 kilograms of cocaine for sentencing purposes. *United States v. Nunez*, 539 F. App'x 502 (5th Cir. 2013). The government did not object to the PSR, which asserted that the defendant was responsible for 392.7 kilograms of cocaine, or to the district court's determination that the defendant was responsible for 92.7 kilograms. *Id.* at 503–04. Applying plain-error review, the Fifth Circuit stressed that there was "no language in the agreement requiring the Government to object to a determination by the probation officer or the court that [the defendant] was responsible for an amount of cocaine greater than" set out in the plea agreement. *Ibid.* The court noted that—like Smith's agreement in this case—the relevant plea agreement stated that the sentencing court was not bound by the parties' stipulations and was authorized to impose any sentence up to the statutory maximum. *Id.* at 503. Thus, the defendant could not show "clear or obvious error with respect to his contention that the Government's silence was a breach of the agreement." *Id.* at 504.

Additional caselaw from other circuits confirms that courts are hesitant to impose obligations on the government to object to a PSR when such objections are not compelled by the plain text of a plea agreement.

In *United States v. Riviera-Solona*, the Eleventh Circuit determined that the government did not violate a stipulation in a plea agreement that there was insufficient evidence to support a firearms enhancement when it failed to object to the PSR's recommendation that the enhancement be applied. 531 F. App'x 986, 988, 991 (11th Cir. 2013). The court stressed that

"[t]he express terms of the plea agreement did not obligate the government to do anything with respect to" the enhancement, and that the plea agreement established that the sentencing court "was not bound by the parties' stipulation." *Id.* at 991. Similar to Smith here, the defendant in *Riviera-Solona* failed to "cite any authority establishing that the government's promise not to recommend a particular sentencing enhancement also includes a promise to affirmatively object to that sentencing enhancement if the probation officer includes it in the [PSR's] calculations or if the district court imposes it." *Id.* at 992.

The Second Circuit in *United States v. Lawlor* rejected a defendant's argument that the government was obligated to object to a PSR that recommended that the defendant's base offense level be calculated under a different guidelines provision than was stipulated to in the plea agreement. 168 F.3d 633, 636–37 (2d Cir. 1999). The court held that the plea agreement's stipulation did not "obligat[e] the government to bring the issue to the attention of [the defendant] or the District Court at the sentencing hearing, or to object to the PSR on the defendant's behalf." *Id.* at 637. Thus, the government's failure to object did not constitute a breach. *Ibid.*

Similarly, in *Jeffries v. United States*, the Eighth Circuit held that "the prosecution was not required to object to the probation office's recommendation" "against a reduction for acceptance of responsibility," despite the prosecution's agreement to recommend that the court apply the adjustment. 721 F.3d 1008, 1011, 1015 (8th Cir. 2013); *see also United States v. Has No Horses*, 261 F.3d 744, 750 (8th Cir. 2001) (finding no breach where "the plea agreement did not obligate the government to object to recommendations made in the presentence report" that conflicted with the plea agreement).

A common thread running through each of these cases is the court's focus on whether the government violated an express promise made in a plea agreement to take—or to refrain from taking—certain action. The prosecutor violated no such express promise in this case; in fact, at no point did the prosecutor advocate for a sentence based on a drug quantity higher than the stipulated amount. *Cf. United States v. Fitch*, 282 F.3d 364, 366–68 (6th Cir. 2002) (government breached a plea agreement stipulating that it would recommend that the defendant's sentence be based solely on the specific quantity of drugs specified in the plea agreement by "vigorously advocating" for an enhancement for a leadership role at sentencing). Thus, in light of this court's decision in *Climer* and the comparable precedent from other circuits, as well as the lack of precedent establishing that a prosecutor has an obligation to object sua sponte to a PSR that sets out a stipulation from a plea agreement but does not adopt it, Smith is unable to demonstrate on plain-error review that the prosecutor's silence was a breach of the plea agreement. *Cf. United States v. Lantz*, 443 F. App'x 135, 139 (6th Cir. 2011) ("A lack of binding precedent on the specific issue indicates that there is no plain error."); *United States v. Melton*, 233 F. App'x 545, 547 (6th Cir. 2007) (error could not be "clear" or "unequivocal" where this court "had never addressed the issue").

B

Smith's reliance on *United States v. Logan* and *United States v. Foster*, *see* Appellant Reply Br. 1–2, does not change the outcome. In *Logan*, this court determined that the prosecutor violated a plea agreement that specifically provided that the government would "not . . . oppose [the defendant's] request for a two-level reduction of his offense level for acceptance of responsibility." 542 F. App'x 484, 489 (6th Cir. 2013). In that case, the government asserted in its sentencing memorandum that the applicable "guidelines properly . . . *do not* include a . . .

reduction for acceptance of responsibility." *Ibid.* (emphasis added). At sentencing, moreover, the government stated "that it had 'no disagreements' with the [PSR], which explicitly stated that a reduction for acceptance of responsibility was improper," and "specifically asked that [the defendant's] motion for a downward variance for acceptance of responsibility be denied." *Ibid.* While this court did note that the government failed to voice any disagreements with the PSR, the government's conduct went well beyond mere tacit approval of a PSR that contradicted the plea agreement. Indeed, the court explicitly stated that "there would have been no breach had the government remained neutral at sentencing as to acceptance of responsibility." *Id.* at 490. Instead, the government "went further, arguing that . . . a reduction for acceptance of responsibility was not appropriate," in violation of "the promise it made in the plea agreement." *Ibid.*[2] No such conduct occurred in this case, as the prosecutor did, in fact, remain neutral at sentencing regarding the drug-quantity issue, which was never raised.

In *Foster*, this court determined that the government violated a plea agreement that stipulated a specific guidelines range and provided that neither party could take a different position concerning the guidelines. 527 F. App'x 406, 407 (6th Cir. 2013). In its supplemental briefing, however, the government proposed an alternative guidelines range. It was this specific violation of the plea agreement's express terms that we found constituted a breach. *Id.* at 409. Again, no such conduct occurred here.

At most, the prosecutor here stood mute in the face of the PSR's guidelines calculation. *See United States v. Miller*, 48 F. App'x 933, 946 (6th Cir. 2002) ("[T]he government did not breach the plea agreement by standing mute on the issue of acceptance of responsibility" when

---

[2] Even after determining that the government violated the plea agreement in *Logan*, this court held that the defendant was "not entitled to resentencing" because he "failed to establish that the government's breach affected his substantial rights under plain-error analysis." 542 F. App'x at 490.

"the government took no position on the issue" and "the plea agreement did not require the government to take the affirmative step of supporting a reduction for acceptance of responsibility."). At no point did the prosecutor "explicitly agree with the probation officer's conclusion in the" PSR regarding the applicable drug quantity or "advocate that the district court accept the probation officer's recommendation." *United States v. Baker*, 19 F. App'x 223, 226 (6th Cir. 2001).

IV

In his brief, Smith mentions in passing that the PSR calculated the advisory guidelines range "based upon numbers provided as part of Smith's cooperation" with the government. Appellant Br. 6–7. Smith does not mention his proffer and does not argue specifically that any "proffer-protected" information was included in the PSR's calculations. Nor does Smith challenge the PSR's assertions that the larger drug quantity was based on unprotected admissions and was attributable to him. Because Smith did not object to the PSR below on this or any ground and does not develop any arguments on appeal, this issue is forfeited. *See, e.g.*, *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

V

Smith has failed to cite any authority to support his assertion that the government's stipulation regarding drug quantity included an implicit promise to object if the Probation Office or district court adopted a different drug quantity in computing the applicable guidelines range. While Smith's argument raises some important concerns, we are constrained on plain-error review to correct only those errors which are "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). We therefore AFFIRM the district court's sentence.